CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 11 2012
JULIA C. DUDLEY, CLERK
BY: /s/ Brown
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **MARLIN L. RUDD,** | ) | CASE NO. 7:12CV00348 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | |
| | ) | |
| **REBECCA ARNEY, ET AL.,** | ) | By: James C. Turk |
| | ) | Senior United States District Judge |
| Defendant(s). | ) | |

Marlin L. Rudd, then a Virginia inmate proceeding pro se,[1] filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging among other things that prison officials wrongfully refused to allow him to work at his prison job for about three weeks, in violation of his constitutional rights. Upon review of the record, the court summarily dismisses the action without prejudice, under 28 U.S.C. § 1915A(b)(1), as frivolous.

I

Rudd's submissions present the following sequence of events related to his claims. In April 2012, Rudd was confined at Bland Correctional Center, where he worked outside the prison, normally in the slaughter house. When Rudd reported for his work assignment on April 30, 2012, Sgt. Davis assigned him to work outside mowing grass and using a weedeater. Rudd told Davis that he has "very bad allergies and asthma [and] had been taking breathing treatments twice a day as needed" (Compl. 4.) Davis asked an officer to take Rudd to see a nurse.

Rudd explained his allergy and asthma problems to Nurse Tyree and also told her that he would be receiving a new Q-var inhaler with steroids in it within a few days. Tyree told Rudd and the officers with him that Rudd should be off work until his new inhaler arrived. One of the officers radioed this information to Davis and told Rudd to return to his dorm. The dorm officer

---

[1] Shortly after filing this action, Rudd notified the court that he had been released from prison.

later told Rudd that he was off work for two weeks. Rudd complained about being off work, but no one corrected the situation.

Dr. Miller examined Rudd on May 7, 2012. When Rudd asked how soon he could return to work, the doctor looked through the medical file, said he saw no reason Rudd could not immediately return to work, and told him to do so. Rudd reported to work on May 8, 2012. Davis told him, "[Y]ou['re] not working today Rudd." Rudd told her that the doctor had approved him for work the previous day. Davis told him that she had an email indicating that "medical [had] pull[ed Rudd's] gate pass." Davis said, "[T]hat's what you get for not going to work where I tell you." Rudd accused Davis of using his medical issues against him to pull his gate pass. Rudd was not allowed to work outside the gate for 22 days.

Rudd tried unsuccessfully to file harassment charges and a criminal complaint against Davis. Rudd wrote to the magistrate and the "ACLU" and filed informal complaints and grievances about the incident. On May 28, 2012, Nena Adams called Rudd in to talk with her about one of his informal complaints that she did not understand. While Rudd and Adams were talking, Davis and several other officers came into the room and listened to the conversation. Rudd felt "set up," humiliated, and intimidated. Rudd asked internal affairs to investigate the May 28, 2012 meeting, and an officer interviewed him, but Rudd claims nothing was done.

After a meeting with Rudd and others on June 4, 2012, Adams sent Rudd a memorandum explaining the events of which he complains. (Adams Memorandum of June 12, 2012, ECF No. 2, p. 23.) Adams said that at the meeting on May 28, 2012, Adams, Davis and others were merely trying to understand Rudd's complaints. Adams' memorandum also explained to Rudd that Davis was not responsible for Rudd's being unable to work outside the prison in May 2012 or for suspending permission for him to work outside the gate, as such an action must be

2

approved by the warden. Adams' memorandum also indicated that after Rudd refused to cut grass on April 30, 2012, he talked to Counselor Powers. Powers understood that Rudd wanted to continue to work outside the gate once his new inhaler arrived. Powers called medical and spoke to Rebecca Arney, who responded by email: "[Rudd] has had breathing difficulties this past weekend 2 days in a row and was seen by the Dr. today; meds were ordered, but [Rudd] would be safer inside the facility until his meds are here and helping to regulate him (appr. 2 weeks)." (ECF No. 2, p. 23.)

Adams' memorandum also reported that at the June 4 meeting, Arney admitted misreading the medical notes and clarified that Rudd had not actually seen a doctor on April 30. Arney also verified, however, medical notes that Rudd had complained of shortness of breath on April 28 and 29, 2012. Rudd admits that nurses consulted with a doctor by telephone about giving Rudd a breathing treatment on April 29, 2012. Adams' memorandum explained to Rudd that Arney had exercised her authority as medical administrator to decide that Rudd "should be inside the facility approximately two weeks, which would allow time for the inhaler ordered by the doctor [to have] opportunity to 'regulate' [his breathing]." (ECF No. 2, . 23.)

In his § 1983 complaint, Rudd raises the following claims: (1) Sgt. Davis called the medical unit instead of relying on Nurse Tyree's assessment of Rudd's breathing trouble on April 30, 2012; (2) Rebecca Arney, as medical administrator, did not do "a proper job when dealing with Rudd's medical issues [on April 30, 2012] and follow up on complaints"; and (3) Adams "created an intimidat[ing] situation to get information on May 30, 2012," and "did a po[or] job as grievance coordinator by not letting [Rudd] respond to her June 12, 2012 memorandum." Rudd seeks to recover his lost wages and other monetary damages.

3

## II

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988).

Rudd does not clearly define the constitutional issues he seeks to raise against each of the defendants. Because Rudd is proceeding pro se, however, the court must liberally construe his complaint to allow the development of a potentially meritorious claim, if any is present. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972) (finding that court must hold pleadings filed by a pro se litigant "to less stringent standards than formal pleadings drafted by lawyers). On the other hand, the court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. Weller v. Department of Social Servs., 901 F.2d 387, 391 (4th Cir. 1990).

### A.

Rudd appears to be complaining that Sgt. Davis wrongfully interfered with his ability to work, by giving him a new work assignment and then honoring an involuntary two-week work furlough based on his breathing problems as identified by medical staff. Inmates have no

4

independent constitutional right to a prison job, however, and as such, prison officials may generally terminate an inmate from a particular prison job for any reason without offending federal due process principles. See, e.g., Bulger v. United States Bureau of Prisons, 65 F.3d 48 (5th Cir. 1995); Coakley v. Murphy, 884 F.2d 1218, 1221 (9th Cir. 1989) (holding that inmates have no protected property interest in continuing in work-release program). Under these principles, Rudd has no constitutional claim against Davis or any of the defendants for their roles in causing his temporary inability to work outside the prison. Rudd also has no claim against Davis (or any other defendant) for failing to arrange for him to work only in the slaughterhouse, where his allergies and breathing troubles had not been a problem. Because Rudd simply had no constitutionally protected right as a prisoner to work for wages during his incarceration, he has no monetary claim arising from his inability to do so for a few weeks. Pursuant to § 1915A(b)(1), the court summarily dismisses Rudd's claim against Defendant Davis as legally frivolous.[2]

B.

Rudd appears to complain that Defendant Arney violated his constitutional rights by mistakenly reading Rudd's medical record and, based on those mistakes, deciding that Rudd should not work outside the prison for two weeks because of his breathing problems and

---

[2] Rudd also has no retaliation claim against Davis. To succeed on a § 1983 claim that prison officials retaliated against him, an inmate must allege facts showing that his exercise of a constitutional right was a substantial factor motivating the retaliatory action. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993) (citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977). Plaintiff must present more than conclusory allegations of retaliation. Adams, 40 F.3d at 74. Rudd does not allege that Davis took any adverse action against him based on his exercise of a constitutionally protected right or that her actions chilled his exercise of his constitutional rights in any way.
    Moreover, Rudd's own submissions indicate that Davis had no personal involvement in determining that Rudd should not work outside the prison for two weeks. Arney, as medical administrator, made this decision, and Davis rightfully relied on Arney's medical judgment that a brief hiatus from work was appropriate based on Rudd's medical needs. See Miltier v. Beorn, 896 F.2d 848, 855 (4th Cir. 1990).

5

medication. A mere disagreement between an inmate and medical personnel over decisions on medical needs does not implicate the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975) (finding questions of medical judgment not subject to judicial review under § 1983). Officials' negligent actions simply do not give rise to any constitutional claim actionable under § 1983, even when an inmate suffers some adverse consequence as a result. See, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) ("[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold" of constitutional protections). See also Estelle v. Gamble, 429 U.S. 97, 105-106 (1976) (finding that negligent actions related to medical care do not state a federal claim).

Rudd's claims against Defendant Arney are legally frivolous. He faults Arney for being overly cautious about the risk that working outside the facility might aggravate his allergies and asthma, given his recent complaints of breathing problems. Even assuming without finding that Arney negligently misread records or misjudged risks as being higher than they were in reality, the Constitution does not protect Rudd from such negligence, particularly where, as here, he fails to demonstrate any manner in which he suffered physical harm as a result of Arney's actions. The court summarily dismisses Rudd's claims against Arney under § 1915A(b)(1) as frivolous.

C.

Rudd apparently sues Defendant Adams for her part in the May 30, 2012, meeting in which he felt threatened and for failing to address his continued grievances about the incidents on April 30, and May 30, 2012, even after Adams' June 12, 2012 memorandum explaining why his prior grievances about these matters were based on misunderstandings. Neither of these allegations states a constitutional claim actionable under § 1983.

6

Case 7:12-cv-00348-JCT-RSB Document 15 Filed 10/11/12 Page 6 of 8 Pageid#: 109

To prove a prison official liable for a harmful prison condition, an inmate must show that the official acted with deliberate indifference–that she knew, subjectively, the condition presented a substantial risk of serious harm and nevertheless failed to take "reasonable measures" to alleviate it. Farmer v. Brennan, 511 U.S. 825, 835-37 (1994). The inmate must also show, objectively, that he suffered a "serious or significant physical or emotional injury" as a result of the defendant's deliberate indifference. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993). An officer's negligent failure to alleviate a potentially harmful prison condition do not violate an inmate's constitutional rights, even when he suffers some injury as a result. Lewis, 523 U.S. at 849. Nothing in the record suggests that the officers gathered to talk with Rudd on May 30, 2012, did anything harmful to him or that they could have predicted that their presence would frighten or intimidate Rudd. Thus, Rudd's allegations fail to state any Eighth Amendment claim against Adams related to this meeting.

Inmates do not have a constitutionally protected right to a grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (collecting cases). Thus, a prison official's failure to comply with the state prison's grievance procedure is not actionable under § 1983. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Applying these principles, Rudd can have no constitutionally significant claim concerning Adams' handling of his grievances or the manner in which she or others investigated and responded to his grievances.

Finding no basis in Rudd's allegations for any constitutionally significant claim against Adams, the court summarily dismisses all such claims, pursuant to § 1915A(b)(1), as frivolous. An appropriate order will issue this day.

7

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 11th day of October, 2012.

*/s/ James C. Turk*
Senior United States District Judge